IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **DAVID UPDIKE**, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**CLACKAMAS COUNTY** and **CRAIG ROBERTS**, in his official capacity,<br><br>Defendants. | Case No. 3:15-cv-00723-SI<br><br>**OPINION AND ORDER** |

Daniel J. Snyder, Carl Lee Post, and John D. Burgess, LAW OFFICES OF DANIEL SNYDER, 1000 S.W. Broadway Street, Suite 2400, Portland, OR 97205; Debra J. Patkin, National Association of the Deaf, 8630 Fenton Street, Suite 820, Silver Spring, MD 20910. Of Attorneys for Plaintiff.

Stephen L. Madkour, Clackamas County Counsel, and Kathleen J. Rastetter, Assistant Clackamas County Counsel, 2051 Kaen Road, Oregon City, OR 97045. Of Attorneys for Defendants.

**Michael H. Simon, District Judge.**

On April 29, 2015, Plaintiff David Updike ("Updike" or "Plaintiff") filed a putative class

action lawsuit against Defendants Clackamas County and Clackamas County Sheriff Craig

Roberts ("Sheriff Roberts").[1] In his amended complaint, Updike alleges two claims:

(1) discrimination in violation of Title II of the Americans with Disabilities Act ("ADA");[2] and

(2) discrimination in violation of § 504 of the Vocational Rehabilitation Act of 1973

("Rehabilitation Act").[3]

Defendants move to dismiss Updike's amended complaint. Defendants argue that the

Court should dismiss Updike's amended complaint for four reasons: (1) Updike's claims against

Sheriff Roberts in his official capacity are redundant with Updike's claim against Clackamas

County; (2) the relevant statute of limitations bars any claims based on events that happened

more than one year before Updike filed his complaint; (3) Updike lacks standing to bring a claim

for equitable relief; and (4) Updike's putative class action claims fail to meet the requisite

elements of Federal Rule of Civil Procedure 23. For the reasons that follow, the Court grants

Defendants' motion in part and denies the motion in part.

## STANDARDS

A motion to dismiss for failure to state a claim may be granted only when there is no

cognizable legal theory to support the claim or when the complaint lacks sufficient factual

allegations to state a facially plausible claim for relief. *Shroyer v. New Cingular Wireless Servs.,*

*Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). In evaluating the sufficiency of a complaint's factual

allegations, the court must accept as true all well-pleaded material facts alleged in the complaint

and construe them in the light most favorable to the non-moving party. *Wilson v. Hewlett-*

*Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012); *Daniels-Hall v. Nat'l Educ. Ass'n*, 629

---

[1] Sheriff Roberts has held his position since 2005.

[2] 42 U.S.C. § 12132.

[3] 29 U.S.C. § 794.

F.3d 992, 998 (9th Cir. 2010). To be entitled to a presumption of truth, allegations in a complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). All reasonable inferences from the factual allegations must be drawn in favor of the plaintiff. *Newcal Indus. v. Ikon Office Solution*, 513 F.3d 1038, 1043 n.2 (9th Cir. 2008). The court need not, however, credit the plaintiff's legal conclusions that are couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

A complaint must contain sufficient factual allegations that "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr*, 652 F.3d at 1216. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

## BACKGROUND

For purposes of this motion, the Court takes as true the following facts alleged in the amended complaint. Updike has been deaf his entire life. He relies primarily on American Sign Language ("ASL") to communicate with other people. Without auxiliary aids, such as video conferencing and closed-captioning functions, Updike cannot use a standard telephone or understand programs on television. Many other hearing-impaired people similarly rely on ASL and auxiliary aids to communicate and understand television programming.

Updike served time in Clackamas County Jail on multiple occasions. On approximately October 11, 2010, Updike began serving a 30-day sentence in the Clackamas County Jail. From

approximately April 30 to May 24, 2013, Updike served another sentence in Clackamas County Jail. On July 7, 2014, Updike again served time in the Clackamas County Jail.

On each of these occasions, Clackamas County corrections employees knew that Updike was deaf. Nonetheless, Defendants did not provide Updike with an ASL interpreter. With no available ASL interpreter, Updike had limited ways of communicating with jail staff, including medical professionals. Defendants also repeatedly failed to provide Updike with auxiliary aids and services for communication. The denial of these aids and services effectively deprived Updike of the ability to speak over the telephone with his attorney and Updike's family and the possibility of fully using the television for recreation. Non-hearing-impaired inmates have the opportunity to speak with their attorneys and families and fully participate in recreational activities, such as watching television.

During Updike's incarceration in 2013, Clackamas County corrections employees could not adequately communicate with Updike and failed to understand his reports of harassment by other inmates. Because Clackamas County corrections employees either misunderstood Updike's reports or purposefully retaliated against him, Defendants placed Updike in solitary confinement. Lack of effective communication, lack of meaningful telephone access, and lack of recreational opportunities equal to those of non-hearing-impaired inmates caused Updike to feel frustrated, humiliated, and isolated.

Updike asserts that his experience at Clackamas County Jail is representative of the experiences of other hearing-impaired prisoners. According to Updike, Defendants have failed to provide hearing-impaired inmates with adequate access to sign language interpreters. Lack of access to sign language interpreters inhibits the ability of inmates effectively to communicate with Clackamas County employees, particularly medical professionals. Defendants also fail to

provide hearing-impaired inmates with auxiliary aids and services necessary for the inmates to

understand television programming and jail announcements. Defendants do not give hearing-

impaired inmates access to interpreters or other auxiliary aids and services during disciplinary

proceedings, effectively depriving the inmates of the ability to defend themselves. Updike seeks

to represent past and future hearing-impaired inmates in a putative class that runs for eleven

years from the filing of the amended complaint. Updike seeks both compensatory damages and

equitable relief on behalf of the class.[4]

## DISCUSSION

### A. Claims Against Sheriff Roberts

Updike has sued both Clackamas County and Sheriff Roberts in his official capacity.

When a plaintiff brings a lawsuit against a government officer in his official capacity, a court

treats the suit "as a suit against the entity" that employs the officer. *Kentucky v. Graham*,

473 U.S. 159, 166 (1985); *see Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658,

690 n.55 (1978) ("[O]fficial-capacity suits generally represent only another way of pleading an

action against an entity of which an officer is an agent."). Courts may dismiss as redundant a

defendant sued in his or her official capacity when the plaintiff has also sued the entity that the

officer represents. *Ctr. for Bio-Ethical Reform, Inc. v. Los Angeles Cnty. Sheriff Dep't*, 533

F.3d 780, 799 (9th Cir. 2008).

Updike argues that naming Clackamas County as a defendant does not render his suit

against Sheriff Roberts redundant. According to Updike, the suit against Sheriff Roberts serves

as a suit against the Clackamas County Sheriff's Office, a municipal entity that is separate and

---

[4] The Court notes that Updike has brought similar claims, albeit not as a putative class action, against the City of Gresham, Multnomah County, and the State of Oregon. *See Updike v. City of Gresham*, 99 F. Supp. 3d 1279 (D. Or. 2015); *Updike v. City of Gresham*, 62 F. Supp. 3d 1205 (D. Or. 2014).

distinct from Clackamas County. The Clackamas County Sheriff's Office, Updike asserts,

manages the day-to-day operations of Clackamas County Jail, whereas Clackamas County may

have more of an oversight role regarding general county-wide policies and procedures. Updike

argues that he has named both entities—Clackamas County and, through Sheriff Roberts, the

Clackamas County Sheriff's Office—because Updike needs more time for discovery before

Updike can definitively determine which entity makes the decisions regarding auxiliary aids and

services for hearing-impaired inmates.

Decisions in this and other jurisdictions counsel treating a county sheriff's office and a

county as the same entity. State law determines a local entity's capacity for suit in federal court.

Fed. R. Civ. P. 17(b). Oregon law provides:

> A suit or action may be maintained against any county and against
> the State of Oregon by and through and in the name of the
> appropriate state agency upon a contract made by the county in its
> corporate character, or made by such agency and within the scope
> of its authority; . . . *An action or suit may be maintained against*
> *any other public corporation mentioned in ORS 30.310 for an*
> *injury to the rights of the plaintiff* arising from some act or
> omission of such other public corporation within the scope of its
> authority.

Or. Rev. Stat. ("ORS") § 30.320 (emphasis added). ORS § 30.310 mentions "the State of Oregon

or any county, incorporated city, school district or other public corporation of like character in

this state."

Oregon appellate courts have not decided whether ORS §§ 30.310-30.320 allow for suit

against a county sheriff's office separately and in addition to the county itself. Looking to these

Oregon statutes, however, the Ninth Circuit has held that under Oregon law, a court in this

district "properly dismissed Clackamas County Mental Health because that entity lacks the

capacity to be sued." *Christman v. Oregon*, 32 F. App'x 414, 415 (9th Cir. 2002). Another

federal court in this district has noted that a sheriff's office "is not a separate legal entity subject

to suit." *Bobo v. Plymouth Hous. Grp.*, 2014 WL 6085858, at *1 (D. Or. Nov. 7, 2014).

Similarly, a court in this district found that the Portland Police Bureau is "part of the City

because it fulfills the City's policing functions" and thus is not susceptible to suit separately from

the City of Portland. *Keller v. City of Portland*, 1998 WL 1060222, at *4 (D. Or. Nov. 13, 1998).

In Washington State, "in a legal action involving a county, the county itself is the only

legal entity capable of suing and being sued." *Broyles v. Thurston Cnty.*, 147 Wash. App. 409,

427-28 (2008) (quoting *Nolan v. Snohomish Cnty.*, 59 Wash. App. 876, 883 (1990)). In

*Melendres v. Arpaio*, the Ninth Circuit held that under Arizona state law, Maricopa County

Sheriff's Office constituted a "non-jural entity," lacking separate legal status from the county and

thus having no capacity to sue or be sued in the office's own name. 784 F.3d 1254, 1260 (9th

Cir. 2015). The Ninth Circuit thus ordered that Maricopa County be substituted as a party in lieu

of Maricopa County Sheriff's Office and that, on remand, the district court could consider

dismissal of Sheriff Arpaio in his official capacity. *Id.*; *but see Streit v. Cnty. of Los Angeles*, 236

F.3d 552, 556 (9th Cir. 2001) (holding that under California law, as interpreted by the Ninth

Circuit in previous decisions, Los Angeles Sheriff's Department is a "public entity" that is

separately suable in federal court).

The Court finds persuasive the decisions that have held that a plaintiff may not separately

sue Oregon entities such as the Clackamas County Sheriff's Office. The Clackamas County

Sheriff's Office is a department of the county and fulfills Clackamas County's policing

functions. As Updike alleges in paragraph nine of his amended complaint, "[Clackamas] County,

through the Clackamas County Sheriff's Office, owns and operates the correctional facilities or

jail in Clackamas County, Oregon, known as the Clackamas County Jail and is responsible for

the inmates in said jail." Clackamas County has ultimate responsibility for the treatment of

inmates at the county jail. The Clackamas County Sheriff's Office also resembles Clackamas County Mental Health, a department of the county that the Ninth Circuit found was not susceptible to a separate lawsuit from the county. Updike's claims against Sheriff Roberts in his official capacity, and through him against the Clackamas County Sheriff's Office, are redundant with Updike's claims against Clackamas County.[5] The Court dismisses Updike's claims against Sheriff Roberts.[6]

## B. Statute of Limitations

Defendants argue that the one-year statute of limitations in ORS § 659A.875(1) bars Updike's claims based on conduct occurring in 2010 and 2013. The ADA and the Rehabilitation Act do not contain limitation periods. For claims under these statutes, the Ninth Circuit looks to the limitation periods in comparable state statutes. *See Sharkey v. O'Neal*, 778 F.3d 767, 770 (9th Cir. 2015) ("Title II of the ADA does not contain an express statute of limitations. . . . [W]e borrow the statute of limitations applicable to the most analogous state-law claim, so long as 'it is not inconsistent with federal law or policy to do so.'") (citation omitted); *Douglas v. Cal. Dep't of Youth Auth.*, 271 F.3d 812, 823 n.11 (9th Cir.), *amended*, 271 F.3d 910 (9th Cir. 2001) ("The statute of limitations for the Rehabilitation Act Section 504 claim is provided by the

---

[5] The Court held oral argument on November 23, 2015. During oral argument, Updike's legal counsel expressed concern that Clackamas County will argue that official conduct undertaken by Sheriff Roberts is not the official conduct of Clackamas County. In the event that Clackamas County makes such an argument, Updike has leave to amend his complaint, with full relation back, to rename Sheriff Roberts in his official capacity.

[6] Updike cannot cure this defect in his amended complaint by naming Sheriff Roberts in his individual capacity. *See Vinson v. Thomas*, 288 F.3d 1145, 1156 (9th Cir. 2002) ("[A] plaintiff cannot bring an action under 42 U.S.C. § 1983 against a State official in her individual capacity to vindicate rights created by Title II of the ADA or section 504 of the Rehabilitation Act.").

analogous state law. In this case, both parties agree that California's one-year statute of limitations for personnel injuries governs [the plaintiff's] Section 504 claim.").

The Ninth Circuit has held that where a state has enacted a disability statute containing a limitation period, that statute, as opposed to general personnel injury statutes, supplies the limitation period for ADA claims. *Sharkey*, 778 F.3d at 770-73. This Court has also held that the Oregon Rehabilitation Act supplies the state law most analogous to employment discrimination claims under the Rehabilitation Act. *Clink v. Or. Health & Sci. Univ.*, 9 F. Supp. 3d 1162, 1166-68 (D. Or. 2014). Because the Oregon Rehabilitation Act imposes a one-year statute of limitations, *see* ORS § 659A.875(1), the Court held that a one-year limitation period applied to the plaintiff's employment discrimination claim under the federal Rehabilitation Act. *Clink*, 9 Supp. 3d at 1166-68 ("[T]he Oregon Rehabilitation Act's specific purpose of preventing discrimination based on disability makes it more analogous to the federal Rehabilitation Act than Oregon's general personal injury statutes.").

ORS § 659A.875 supplies limitation periods for specifically enumerated disability claims. ORS § 659A.875(1), which Defendants argue applies in this case, states: "Except as provided in subsection (2) of this section, a civil action under ORS 659A.885 alleging an unlawful employment practice must be commenced within one year after the occurrence of the unlawful employment practice unless a complaint has been timely filed under ORS 659A.820." ORS § 659A.885 allows civil actions seeking equitable relief, compensatory damages, and punitive damages under any of the provisions from ORS § 659A.103 to ORS § 659A.145. This includes ORS § 659A.142(5)(a): "It is an unlawful practice for state government to exclude an individual from participation in or deny an individual the benefits of the services, programs or

activities of state government or to make any distinction, discrimination or restriction because the individual has a disability."

Updike argues that ORS § 659A.875(1) applies to claims alleging unlawful employment practices but not to claims alleging other types of unlawful disability discrimination. Oregon's Rehabilitation Act does not explicitly state a limitation period for claims arising under ORS § 659A.142(5)(a). Another court in this district held that although ORS § 659A.142 of Oregon's Rehabilitation Act "is the most analogous state statute to the ADA and Rehabilitation Act claims," ORS § 659A.875(1)'s statute of limitations does not apply to claims under ORS § 659A.142. *T.L. ex rel. Lowry v. Sherwood Charter Sch.*, 2014 WL 897123, at \*9 (D. Or. Mar. 6, 2014). ORS § 659A.875(1)'s statute of limitations does not apply because "an action alleging a violation of ORS 659A.142 . . . is *not* 'a civil action under ORS 659A.885 *alleging an unlawful employment practice*[.]'" *Id.* (quoting ORS § 659A.875(1)) (emphasis and alteration in original).

Instead of ORS § 659A.875(1), the *Lowry* court applied the statute of limitations in ORS § 12.110. *Id.* ORS § 12.110 states that a two-year statute of limitations applies to actions for "any injury to the person or rights of another, not arising on contract, and not especially enumerated in [ORS Chapter 12]." ORS Chapter 12 contains no statute of limitations specifically for disability discrimination actions or any other type of discrimination action. Thus, the *Lowry* court found the two-year statute of limitations to be most appropriate for the plaintiff's disability discrimination claims under the ADA and the Rehabilitation Act. *Lowry*, 2014 WL 897123, at \*9.

Another court in this district similarly has found that a two-year statute of limitations, rather than ORS § 859A.875(1)'s one-year statute of limitations, applies to ADA claims. *See*

*Walden v. Dawson*, 2014 WL 5810824, at *6 (D. Or. Nov. 7, 2014). The court reasoned: "As discussed in *Lowry* at length, the one-year limitation period in ORS § 659A.875(1) applies to civil actions alleging an unlawful employment practice. Because this is not an employment action, but a discrimination action, this Court must look elsewhere." *Id.* (footnote and citation omitted). The court noted that because the plaintiff brought an action against the City of Eugene, a public body, ORS § 30.275(9) might supply the most relevant statute of limitations. *Id.* ORS § 30.275(9) provides a two-year statute of limitations for actions "arising from any act or omission of a public body or an officer, employee or agent of a public body within the scope of ORS 30.260 to 30.300." Because both ORS § 12.110 and ORS § 30.275(9) provide a two-year limitation period, the *Walden* court declined to decide which statue actually applied to the plaintiff's ADA claim.

When interpreting Oregon statutes, courts must "giv[e] effect to every provision of a statute." *State ex rel. Dep't of Transp. v. Stallcup*, 341 Or. 93, 101 (2006) (quoting Q*uintero v. Bd. of Parole*, 329 Or. 319, 324 (1999)) (internal quotation marks omitted). Courts must seek to avoid rendering portions of a statute mere "surplusage." *Id.* The Oregon legislature specifically provided that ORS § 659A.875(1) applies to actions "alleging an unlawful employment practice" and that such actions "must be commenced within one year after the occurrence of the unlawful employment practice."

Updike does not allege an unlawful employment practice, and Updike could not have brought any action within one year of an unlawful employment practice occurring. Updike alleges disability discrimination by Clackamas County in a context related to provision of services, programs, and activities rather than employment. ORS § 659A.142(5)(a) applies to disability discrimination in such contexts and provides the Oregon statute most analogous to

Title II of the ADA and § 504 of the Rehabilitation Act. Giving effect to all the words of the ORS § 659A.875(1), the Court finds that the statute of limitations in ORS § 659A.875(1) does not apply to actions under ORS § 659A.142(5)(a) and thus does not apply to Updike's ADA and Rehabilitation Act claims.

Updike has alleged an injury not arising on contract and not otherwise addressed by ORS Chapter 12. Thus, the two-year statute of limitations set forth in ORS § 12.110 might apply to Updike's claims. Updike has, however, also alleged claims arising from acts or omissions of Clackamas County, which falls under the definition of a public body within the scope of ORS § 30.260 to ORS § 30.300. *See Taylor v. Lane Cnty.*, 213 Or. App. 633, 642-43 (2007). Thus, the two-year statute of limitations set forth in ORS § 30.275(9)'s also might apply to Updike's claims. Like the *Walden* court, the Court declines to decide whether ORS § 12.110 or ORS § 30.275(9) applies because both provide a two-year statute of limitations. Accordingly, Updike's claims are subject to a two-year statute of limitations.

Updike alleges unlawful conduct on the part of Clackamas County occurring in October 2010, from April 30 to May 24, 2013, and on July 7, 2014. He filed his original complaint on April 29, 2015. The two-year statute of limitations in either ORS § 12.110 or ORS § 30.275(9) bars Updike's claims based on conduct occurring in October 2010. No applicable statute of limitations bars his claims based on the alleged conduct from April 30 to May 24, 2013, or in July 2014.

This holding is consistent with the Ninth Circuit's decision in *Sharkey*. 778 F.3d at 770-73. There, the Ninth Circuit found that California's disability discrimination statute, rather than California's personal injury statute, supplied the limitation period for an ADA claim. *Id.*  The California statute provided a three-year statute of limitations for "[a]n action upon a liability

created by statute, other than a penalty or forfeiture," which "applies only where the liability is

embodied in a statutory provision and was of a type which did not exist at common law." Cal.

Civ. Proc. Code § 338(a). Oregon's disability discrimination statute supplies a narrower statute

of limitations for employment-related disability discrimination claims. Nothing in the *Sharkey*

decision prohibits looking to other analogous statutes when the state's disability discrimination

statute is silent. The Ninth Circuit also explicitly held that courts need not apply the same

limitation period to all ADA claims. *Sharkey*, 778 F.3d at 770. Oregon courts may thus apply

ORS § 659A.875(1) to employment disability discrimination claims while applying different

statutes, including Oregon's general personal injury statute, to other ADA claims.[7]

**C.  Standing to Seek Equitable Relief**

As an initial matter, courts need not consider class certification before considering

standing. *Easter v. Am. W. Fin.*, 381 F.3d 948, 962 (9th Cir. 2004). A court need consider class

certification before considering standing only if the class-certification issues are "logically

antecedent to the existence of any Article III issues." *Amchem Prods., Inc. v. Windsor*,

521 U.S. 591, 612 (1997). In this case, Updike's standing to seek equitable relief on behalf of a

putative class does not depend upon resolution of class-certification issues.[8] Additionally, given

the expense of litigating class action cases and similar "considerations of fairness and economy,"

the Court finds it appropriate to address at this time Updike's standing to seek equitable relief on

behalf of a putative class. *Wright v. Schock*, 742 F.2d 541, 545 (9th Cir. 1984).

---

[7] The Court's holding is similarly consistent with the holding in *Clink*. 9 F. Supp. 3d at 1166-68. There, the Court addressed only the applicability of ORS § 659A.875(1) to Rehabilitation Act claims involving employment discrimination.

[8] Updike has not moved to certify a class. His motion for class certification is due by April 1, 2016.

### 1. General Requirements

Defendants challenge Updike's standing to seek equitable relief.[9] According to the Ninth Circuit, "[i]n a class action, standing is satisfied if at least one named plaintiff meets the requirements." *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007). Here, Updike is the only named plaintiff. Thus, Updike must demonstrate that he has individual standing to seek an equitable remedy. *See Armstrong v. Davis*, 275 F.3d 849, 860 (9th Cir. 2001) ("In order to assert claims on behalf of a class, a named plaintiff must have personally sustained or be in immediate danger of sustaining 'some direct injury as a result of the challenged statute or official conduct.'" (quoting *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974)); *Hodgers-Durgin v. de la Vina*, 199 F.3d 1037, 1045 (9th Cir. 1999) ("Unless the named plaintiffs are themselves entitled to seek injunctive relief, they may not represent a class seeking that relief.").

To invoke the jurisdiction of the federal courts, a disabled person claiming discrimination under the ADA or the Rehabilitation Act "must satisfy the case or controversy requirement of Article III by demonstrating his standing to sue at each stage of the litigation." *Chapman v.*

---

[9] Under Title II of the ADA, a plaintiff may recover compensatory damages, in addition to any equitable relief he or she may be entitled to recovery, if the plaintiff can prove deliberate indifference or discriminatory intent. *Sharkey*, 778 F.3d at 771 n.5; *Lovell v. Chandler*, 303 F.3d 1039, 1056-58 (9th Cir. 2002); *Ferguson v. City of Phoenix*, 157 F.3d 668, 674 (9th Cir. 1998). Updike pleads deliberate indifference and discriminatory intent in paragraphs 107, 108, and 125 of his amended complaint. At this time, Defendants argue that Updike lacks standing to seek equitable relief but do not argue that Updike lacks standing to seek monetary relief. Standing to seek damages does not alone serve as a basis for standing to seek equitable relief. *Hodgers-Durgin*, 199 F.3d at 1040 n.1 (overruling *Nava v. City of Dublin*, 121 F.3d 453, 456 (9th Cir. 1997)). A plaintiff "bears the burden of showing that he has standing for each type of relief sought." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009); *see also Lewis v. Casey*, 518 U.S. 343, 357 (1996) ("The actual-injury requirement would hardly serve the purpose we have described above—of preventing courts from undertaking tasks assigned to the political branches—if once a plaintiff demonstrated harm from one particular inadequacy in government administration, the court were authorized to remedy *all* inadequacies in that administration.") (emphasis in original).

*Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 946 (9th Cir. 2011). To have standing, a plaintiff must have "personal interest . . . at the commencement of the litigation." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 170 (2000). The personal interest must satisfy three elements throughout litigation: (1) an injury in fact, *i.e.*, an invasion of a legally protected interest that is concrete and particularized, as well as actual or imminent; (2) a causal connection between the injury-in-fact and the defendant's challenged behavior; and (3) likelihood that the injury-in-fact will be redressed by a favorable ruling. *Id.* at 181-82, 189; *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).

The threat of repeated future injury may not be "conjectural or hypothetical." *O'Shea*, 414 U.S. at 494 (internal quotation marks omitted). An injury based on the threat of future arrests, prosecutions, or convictions is too conjectural to constitute actual injury because "a plaintiff can avoid injury by avoiding illegal conduct." *Melendres v. Arpaio*, 695 F.3d 990, 998 (9th Cir. 2012); *Armstrong*, 275 F.3d at 865 ("[S]tanding is inappropriate where the future injury could be inflicted only in the event of future illegal conduct by the plaintiff."). In *O'Shea v. Littleton*, the Supreme Court stated:

> [W]e are . . . unable to conclude that the case-or-controversy requirement is satisfied by general assertions or inferences that in the course of their activities respondents will be prosecuted for violating valid criminal laws. We assume that respondents will conduct their activities within the law and so avoid prosecution and conviction . . . .

414 U.S. at 497.

Similarly, in *City of Los Angeles v. Lyons*, the Supreme Court held that the plaintiff "failed to demonstrate a case or controversy" because he had not established "a real and immediate threat that he would again be stopped for a traffic violation, or for any other offense." 461 U.S. 95, 105 (1983). In *Spencer v. Kemna*, the Supreme Court also found that plaintiffs

lacked standing because their injuries were "contingent upon . . . violating the law, getting

caught, and being convicted." 523 U.S. 1, 15 (1998). The *Spencer* decision relied, in part, on the

mootness analysis in *Lane v. Williams* where the Supreme Court emphasized that the plaintiffs'

claims rested on the contention that plaintiffs would "again violate state law, [be] returned to

prison, and become eligible for parole." 455 U.S. 624, 632 n.13 (1982). According to the

Supreme Court, the plaintiffs "themselves are able—and indeed required by law—to prevent

such a possibility from occurring." *Id.*

A plaintiff may establish likelihood of repeated injury stemming from official conduct in

at least two ways: by showing that (1) "the harm alleged is directly traceable to a written policy";

or (2) "the harm is part of a 'pattern of officially sanctioned . . . behavior, violative of the

plaintiffs' [federal] rights.'" *Armstrong*, 275 F.3d at 860-61 (quoting *LaDuke v. Nelson*, 762

F.2d 1318, 1323 (9th Cir.1985)) (alterations in original). When determining if a plaintiff who

represents a class has established a likelihood of repetition, a court may consider whether

defendants "repeatedly engaged in the injurious acts in the past" and whether the injuries took

place "in the context of the harm asserted by the class as a whole." *Armstrong*, 275 F.3d at 861.

Still, at least one named plaintiff must be "personally subject to the harm" for the class to have

standing. *Id.*

Further, concerns about separation of powers counsel careful scrutiny of a plaintiff's

standing to seek injunctive relief against government officials. As the Supreme Court cautioned:

> When transported into the Art. III context, [the principle that the
> Government has traditionally been granted the widest latitude in
> conducting its own internal affairs], grounded as it is in the idea of
> separation of powers, counsels against recognizing standing in a
> case brought, not to enforce specific legal obligations whose
> violation works a direct harm, but to seek a restructuring of the
> apparatus established by the Executive Branch to fulfill its legal
> duties. The Constitution, after all, assigns to the Executive Branch,

and not to the Judicial Branch, the duty to "take Care that the Laws
be faithfully executed."

*Allen v. Wright*, 468 U.S. 737, 761 (1984), *abrogated on other grounds by Lexmark Int'l, Inc. v.*

*Static Control Components, Inc.*, 134 S. Ct. 1377 (2014).

### 2. Whether Updike Has Standing

Updike asks the Court for injunctive and other equitable relief, including an order

requiring that the Defendants provide qualified ASL interpreters and auxiliary aids and services,

appoint and train ADA coordinators, and establish policies accommodating deaf inmates. Updike

also seeks a declaration that Defendants violated Title II of the ADA and § 504 of the

Rehabilitation Act. According to Updike, he has standing to bring these claims because he

alleges a pattern of officially sanctioned behavior that violates his and other putative class

members' federally-protected rights.

Updike urges the Court to consider the likelihood of repetition in the context of repeated

instances of discrimination asserted on behalf of the putative class. Updike emphasizes that in

*Armstrong*, the Ninth Circuit found that at least a subset of the named plaintiffs had standing to

seek equitable relief after considering the harm alleged to have occurred to the entire class. As

Updike points out, the Ninth Circuit stated:

> [W]here the defendants have repeatedly engaged in the injurious
> acts in the past, there is a sufficient possibility that they will
> engage in them in the near future to satisfy the "realistic repetition"
> requirement. In this regard, where the plaintiffs constitute a
> certified class, "it is not irrelevant that [the named plaintiffs] s[eek]
> to represent broader interests than [their] own."

*Armstrong*, 275 F.3d at 861 (quoting *LaDuke*, 762 F.2d at 1326) (alterations in original).

Updike's case, however, differs substantially from *Armstrong*. In *Armstrong*, the Ninth

Circuit considered standing following certification of the class by the district court. *Id.* at 855-56.

The class included six named plaintiffs serving life sentences with the possibility of parole and

eight named plaintiffs who had their paroles revoked. Four of these named plaintiffs were incarcerated at the time of the bench trial in the district court. *Id.* at 855 n.1. The plaintiffs, all of whom were disabled in some way, alleged discriminatory treatment during parole hearings. *Id.* at 864-65. The *Armstrong* court distinguished this class from other putative classes that the Supreme Court held lacked standing. Unlike in other cases where repetition of the alleged injury depended upon the plaintiffs violating the law:

> [The defendants'] regulations require that prisoners sentenced to life with the possibility of parole be provided with certain hearings as a matter of formal Board policy. . . . No matter how well behaved the prisoners are, no matter how pure and proper their conduct, they must receive the specified hearings, so that the [defendants] may document or determine their parole suitability. . . . The likelihood that a prisoner will be subjected to the hearings involved is, therefore, not at all speculative; rather it is certain. The lawfulness or unlawfulness of [a prisoner's] conduct in the interim is irrelevant to that fact.

*Id.* at 865. The *Armstrong* court stressed that defendants required some plaintiffs to participate in parole revocation proceedings on a yearly basis, and the "pattern of continuing discrimination . . . shows no sign of abating." *Id.* at 867.

      In contrast to the plaintiffs in *Armstrong*, Updike fails to allege a threat of future injury to him personally that goes beyond mere speculation. Updike has no obligation to participate in proceedings that will subject him to the alleged discriminatory pattern and practice. Updike is not currently incarcerated and provides the Court with no reason why he lacks the ability to comply with the legal requirement to conduct his activities within the bounds of the law. Moreover, Updike provides no plausible explanation for his implicit assertion that he will likely be arrested and booked into Clackamas County Jail again, where he will require auxiliary aids and services. The mere fact that Updike has been arrested in the past does not create a plausible, real, and immediate threat of repeated injury, which is required to seek equitable relief.

Even in the context of the broader interests Updike seeks to represent, the harm he alleges on behalf of future hearing-impaired inmates depends on those individuals also violating the law. Updike names no hearing-impaired inmates currently subject to the alleged discriminatory pattern and practice. Allowing standing based on speculation that Updike and unnamed putative class members may become inmates of Clackamas County Jail in the future would open the federal courts to claims by any and all hearing-impaired citizens. This is precisely the sort of claim disallowed by the Supreme Court on numerous occasions. *See, e.g.*, *O'Shea*, 414 U.S. at 497 ("[A]ttempting to anticipate whether and when these respondents [plaintiffs bringing class allegations based on an alleged pattern and practice of discriminatory conduct] will be charged with crime and will be made to appear before either petitioner takes us into the area of speculation and conjecture."). Having failed to allege a substantial likelihood of future injury to Updike himself, Updike lacks standing to seek equitable relief individually or to represent a putative class seeking equitable relief.[10]

---

[10] The Ninth Circuit in *Armstrong* noted the possibility "that hearing impaired, learning impaired, and developmentally disabled individuals engage in a range of coping mechanisms that can give the false impression of uncooperative behavior or lack of remorse." *Armstrong*, 275 F.3d at 867. These disabled parolees can therefore "have difficulty . . . explaining any innocent but non-conforming behavior" and may be subject to proceedings, such as the parole revocation process, more often than non-disabled parolees. *Id.*

Updike alleges that while he was incarcerated, he similarly struggled to communicate with jail employees and was unjustly subjected to disciplinary proceedings as a result. During oral argument on November 23, 2015, Updike's legal counsel suggested that Updike's disability might also make him more likely to be arrested without probable cause. Without allegations concerning how Updike's disability inevitably brings him into contact with law enforcement, what coping mechanisms he engages in that give the false impression of uncooperativeness, or how he struggles to explain innocent but non-conforming behavior when he is not incarcerated, Updike's complaint, despite his alleged disability, falls short of pleading a sufficient likelihood of repeated harm.

**D.  Class Action Allegations**

Defendants also argue that the Court should dismiss or deny Updike's request for class

action status because Updike fails to satisfy the elements of Federal Rule of Civil Procedure 23

for class certification. Defendants raise these issues in a Rule 12(b)(6) motion to dismiss.

Defendants, however, do not cite any authority allowing an attack on the suitability of class

certification through a motion to dismiss for failure to state a claim. The cases cited by

Defendants in their motion to dismiss relate to standards applicable to motions to certify, not

motions to dismiss.

Defendants point to additional cases in their reply brief, asserting that the Ninth Circuit

has affirmed dismissals of class actions pursuant to Rule 12(b)(6) in the interest of judicial

economy. These cases, however, do not stand for the proposition that Defendants assert. In

*Cornilles v. Regal Cinemas, Inc.*, another court in this district held that the plaintiffs' motion to

certify the class should be stayed until after the court assessed the viability of the plaintiffs'

claims through dispositive motions. 2000 WL 1364236, at *2-4 (D. Or. Aug. 2, 2000). Although

the court did not specify the nature of the dispositive motions before it, the court did not suggest

that consideration of a motion to dismiss could substitute for consideration of a motion to certify.

In *Wade v. Kirkland*, the Ninth Circuit addressed only the timing of motions to certify,

not whether a court could dismiss class allegations through a Rule 12(b)(6) motion:

> On remand, the district court should decide the class certification
> motion before proceeding further. We recognize that, in some
> cases, it may be appropriate in the interest of judicial economy to
> resolve a motion for summary judgment or motion to dismiss prior
> to ruling on class certification. This is not one of those cases.

118 F.3d 667, 670 (9th Cir. 1997) (citation omitted). In *Market Trading, Inc. v. AT&T Mobility,*

*LLC*, the Ninth Circuit dismissed a class action complaint because the named plaintiff failed to

plead factual allegations that the defendant caused the plaintiff to suffer harm, "a requisite

element of the stated claims." 388 F. App'x 707, 709 (9th Cir. 2010). In *Burke v. T.V. Guide Magazine Group*, the Ninth Circuit similarly dismissed a class action complaint because the complaint failed to allege the requisite elements of the underlying claims of breach of contract, fraud, and false advertising. 442 F. App'x 356, 358 (9th Cir. 2011). The cases of *Iqbal*, 556 U.S. 662, and *Starr*, 652 F.3d 1202, are not to the contrary. Those cases address pleading requirements for substantive claims, not pleading requirements for class allegations.

As noted by the Northern District of California, at least three problems exist with attacking the sufficiency of a plaintiff's class action claims in a motion to dismiss. *Clerkin v. MyLife.Com*, 2011 WL 3809912, at *3-4 (N.D. Cal. Aug. 29, 2011). First, Rule 12(b)(6) permits a defendant to assert that the opposing party has failed "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A class action is a "procedural device," not a claim for relief. *Deposit Guar. Nat'l Bank, Jackson, Miss. v. Roper*, 445 U.S. 326, 331 (1980). Second, other Federal Rules of Civil Procedure exist to address improper class action allegations. These rules include Rule 12(f), which allows motions to strike based on insufficient defenses or "any redundant, immaterial, impertinent, or scandalous matter." These rules also include Rule 23(d)(1)(D), which allows a court to "require that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly." Finally, the standard of review applied to orders granting motions to dismiss differs from standards governing orders granting motions to strike and denying class certification. Although the Ninth Circuit reviews *de novo* orders granting Rule 12(b)(6) motions, *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 974 (9th Cir. 2010), the Ninth Circuit reviews for abuse of

discretion orders granting motions to strike and denials of class certification. *Id.*; *Marlo v. United Parcel Serv., Inc.*, 639 F.3d 942, 946 (9th Cir. 2011).[11]

Numerous district courts have held that even when a plaintiff's class allegations appear suspicious at the pleading stage, a plaintiff should at least have an opportunity to make the case for class certification following appropriate discovery. *E.g.*, *Shein v. Canon U.S.A., Inc.*, 2009 WL 3109721, at *10 (C.D. Cal. Sept. 22, 2009); *In re Jamster Mktg. Litig.*, 2009 WL 1456632, at *7 (S.D. Cal. May 22, 2009); *In re Saturn L–Series Timing Chain Prods. Liab. Litig.*, 2008 WL 4866604, at *24 (D. Neb. Nov. 7, 2008); *In re Wal-Mart Stores, Inc. Wage & Hour Litig.*, 505 F. Supp. 2d 609, 615-16 (N.D. Cal. 2007); *Beauperthuy v. 24 Hour Fitness USA, Inc.*, 2006 WL 3422198, at *3 (N.D. Cal. Nov. 28, 2006).

Here, consistent with the cases cited by Defendants and in the interest of judicial economy, the Court has considered Defendants' motion to dismiss Sheriff Roberts, dismiss certain claims pursuant to the relevant statutes of limitations, and dismiss Updike's claims for equitable relief without first considering a motion to certify the putative class. Based on the defects in Defendants' use of a Rule 12(b)(6) motion to dismiss Updike's claims, however, the Court finds it inappropriate to address Defendants' motion to dismiss Updike's class allegations at this stage of litigation. Defendants' motion to dismiss the class allegations is premature and is denied, but without prejudice to Defendants' ability to move to strike or dismiss the class allegations or otherwise oppose class certification if and when Updike seeks such certification.

---

[11] In addition, the rules governing interlocutory appealability differ among orders granting or denying motions to dismiss and orders granting or denying motions for class certification. *Compare* 28 U.S.C. § 1292 (interlocutory decisions), *with* Fed. R. Civ. P. 23(f) (class actions).

**CONCLUSION**

Defendants' Motion to Dismiss (Dkt. 12) is GRANTED IN PART and DENIED IN PART. Sheriff Roberts is dismissed from the case as a redundant defendant. Plaintiff's claims based on conduct occurring before April 29, 2013, are dismissed as time-barred. Plaintiff's claims for equitable relief are dismissed for lack of standing. Defendants' motion to dismiss Plaintiff's class action allegations is denied.

**IT IS SO ORDERED**.

DATED this 30th day of November, 2015.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge