## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **DAVID UPDIKE**, on behalf of himself and all others similarly situated,<br><br>       Plaintiff,<br><br>    v.<br><br>**CLACKAMAS COUNTY**,<br><br>       Defendant. | Case No. 3:15-cv-723-SI<br><br>**OPINION AND ORDER** |

Daniel J. Snyder, John D. Burgess, and Carl Lee Post, LAW OFFICES OF DANIEL SNYDER, 1000 S.W. Broadway Street, Suite 2400, Portland, OR 97205; Debra J. Patkin, National Association of the Deaf, 8630 Fenton Street, Suite 820, Silver Spring, MD 20910. Of Attorneys for Plaintiff.

Stephen L. Madkour, Clackamas County Counsel, Shawn A. Lillegren, Assistant Clackamas County Counsel, and Kathleen J. Rastetter, Assistant Clackamas County Counsel, 2051 Kaen Road, Oregon City, OR 97045. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Plaintiff David Updike ("Updike") brings this putative class action against Defendant

Clackamas County ("County"), alleging violations of Title II of the Americans with Disabilities

Act ("ADA"), 42 U.S.C. § 12132, and § 504 of the Vocational Rehabilitation Act of 1973, 29

U.S.C. § 794. Plaintiff asserts claims on behalf of himself and other deaf or hard of hearing

individuals who have been, are, or will be incarcerated at the Clackamas County jail.[1] Pending before the Court are the following three motions, listed in the order in which they will be discussed: (1) Plaintiff's Motion to Compel Production of Documents (ECF 128); (2) Plaintiff's Second Motion to Supplement the Record in Support of Motion for Class Certification (ECF 142); and (3) Plaintiff's Motion for Class Certification (ECF 99).

## BACKGROUND

**A. Factual Allegations**

In his Amended Complaint, Updike alleges that he has been deaf his entire life. He relies primarily on American Sign Language ("ASL") to communicate with other people. Without auxiliary aids, such as video conferencing and closed-captioning functions, Updike cannot use a standard telephone or understand programs on television. Many other hearing-impaired people similarly rely on ASL and auxiliary aids to communicate and understand television programming.

Updike has served time in Clackamas County Jail on multiple occasions. On approximately October 11, 2010, Updike began serving a 30-day sentence. From approximately April 30 to May 24, 2013, Updike served another sentence. On July 7, 2014, Updike again served time in the Clackamas County Jail.

On each of these occasions, Clackamas County corrections employees knew that Updike was deaf. The County, however, did not provide Updike with an ASL interpreter. With no available ASL interpreter, Updike had limited ways of communicating with jail staff, including

---

[1] Plaintiff defines "hard of hearing individuals" as those who have reduced hearing ability but can hear and understand speech and "deaf individuals" as those who cannot hear or have reduced hearing ability and cannot understand speech. ECF 100 at 8 (expert report of Professor Dennis Cokely, Ex. A at 4).

medical professionals. The County also repeatedly failed to provide Updike with auxiliary aids and services for communication. The denial of these aids and services effectively deprived Updike of the ability to speak over the telephone with his attorney and with Updike's family. This also deprived Updike of the possibility of fully using the television for recreation. Non-hearing-impaired inmates have the opportunity to speak with their attorneys and families and fully participate in recreational activities, such as watching television.

During Updike's incarceration in 2013, Clackamas County corrections employees could not adequately communicate with Updike and failed to understand his reports of alleged harassment by other inmates. Because Clackamas County corrections employees either misunderstood Updike's reports or purposefully retaliated against him, the County placed Updike in solitary confinement. Lack of effective communication, lack of meaningful telephone access, and lack of recreational opportunities equal to those of non-hearing-impaired inmates caused Updike to feel frustrated, humiliated, and isolated.

Updike asserts that his experience at Clackamas County Jail is representative of the experiences of other hearing-impaired prisoners. According to Updike, the County has failed to provide hearing-impaired inmates with adequate access to sign language interpreters. Lack of access to sign language interpreters inhibits the ability of inmates effectively to communicate with Clackamas County employees, particularly medical professionals. The County also fails to provide hearing-impaired inmates with auxiliary aids and services necessary for the inmates to understand television programming and jail announcements. In addition, the County does not give hearing-impaired inmates access to interpreters or other auxiliary aids and services during disciplinary proceedings, effectively depriving those inmates of the ability to defend themselves.

Updike alleges that the County discriminates against deaf and hard of hearing individuals through its policies and practices and that such discrimination is willful and deliberate. Updike seeks both compensatory damages and equitable relief on behalf of the class.

## B.  Procedural History

On November 30, 2015, the Court granted in part the County's motion to dismiss, ruling that, among other things, Updike's claims based on conduct occurring before April 29, 2013, were barred under the applicable statute of limitations and that Updike lacked standing to seek injunctive relief individually or to represent a putative class seeking injunctive relief. The Court concluded that Updike's allegations regarding a threat of future injury to himself or other hearing-impaired individuals were too speculative to support standing to seek injunctive relief.[2] *See Updike v. Clackamas Cnty.*, 2015 WL 7722410, at *6, 10 (D. Or. Nov. 30, 2015) (ECF 32).

Updike later moved for leave to file a second amended complaint to add allegations that Updike contends would support his claim for injunctive relief. The Court denied that motion. ECF 54. Later, Updike moved for reconsideration to for leave to file a second amended complaint to add an additional named plaintiff, Andrew Abraham. In a written opinion, the Court denied those motions. ECF 94.

Updike filed his pending motion for class certification, seeking both compensatory damages and equitable relief. In support of his motion, Updike presents evidence not only of discriminatory treatment of Updike by the County but also discriminatory treatment by the County of three other deaf individuals: Andrew Abraham, Michael Scott Elliot, and Frank W. Mounts. Updike argues that the County discriminated against these individuals by failing to

---

[2] For purposes of Plaintiff's Motion for Class Certification, the County concedes that Plaintiff has standing to seek monetary relief. ECF 115 at 13, n 1.

provide them with necessary auxiliary aids and accommodations while they were incarcerated at the Clackamas County jail.

## STANDARDS

### A.  Class Action Certification

Federal class actions are governed by Rule 23 of the Federal Rules of Civil Procedure. The plaintiff "must be prepared to prove" that each of the applicable requirements of the rule is satisfied. *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). Rule 23 sets forth more than a "mere pleading standard." *Id.* Rule 23, however, provides district courts with broader discretion to certify a class than to deny certification. *See Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952, 956 (9th Cir. 2013).

A party seeking class certification must satisfy each of the requirements of Rule 23(a) and at least one requirement of Rule 23(b). *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 542 (9th Cir. 2013). Under Rule 23(a), a district court may certify a class only if:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law and fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). In other words, a proposed class must meet the requirements of numerosity, commonality, typicality, and adequacy of representation. *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 588 (9th Cir. 2012). Rule 23 also requires, implicitly, that the members of the proposed class be objectively ascertainable. *Ott v. Mortgage Investors Corp. of Ohio, Inc.*, 2014 WL 6851964, at *13 (D. Or. Dec. 3, 2014).

In addition to the requirements of Rule 23(a), a party seeking to maintain a class action also must "satisfy through evidentiary proof at least one of the provisions of Rule 23(b)."

*Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013). Here, Plaintiff seeks to certify the proposed class under either Rule 23(b)(2) or Rule 23(b)(3). A class action may proceed under Rule 23(b)(2) if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). A class action may proceed under Rule 23(b)(3) if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

The Rule 23 analysis is "rigorous" and may "entail some overlap with the merits of the plaintiff's underlying claim." *Wal-Mart*, 131 S. Ct. at 2551 (quotation marks omitted); *Comcast Corp.*, 133 S. Ct. at 1432. Nevertheless, Rule 23 "grants courts no license to engage in free-ranging merits inquiries at the certification stage." *Amgen*, 133 S. Ct. at 1195, 1196 (emphasis in original). "Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Id.* at 1195; *see also Baker v. Microsoft Corp.*, 2015 WL 1219506, at *6 (9th Cir. Mar. 18, 2015).

**B. The ADA and the Rehabilitation Act**

Title II of the ADA states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Defendant does not dispute that both the County and the County jail are "public entities" for purposes of the ADA. *See* 43 U.S.C. § 12131(1).

The U.S. Department of Justice regulations implementing Title II of the ADA require public entities to "take appropriate steps to ensure that communications with applicants,

participants, members of the public, and companions with disabilities are as effective as communications with others." 28 C.F.R. § 35.160(a). To ensure effective communication, the ADA requires that a public entity "furnish appropriate auxiliary aids and services where necessary to afford individuals with disabilities, including applicants, participants, companions, and members of the public, an equal opportunity to participate in, and enjoy the benefits of, a service, program, or activity of a public entity." 28 C.F.R § 35.160(b)(1).

Auxiliary aids and services include "qualified interpreters or other effective methods of making aurally delivered materials available to individuals with hearing impairments," 42 U.S.C. § 12103, such as videophones and videotext displays. 28 C.F.R. § 35.104. "In order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability." 28 C.F.R § 35.160(b)(2). The type of auxiliary aid or service necessary to ensure effective communication "will vary in accordance with the method of communication used by the individual; the nature, length, and complexity of the communication involved; and the context in which the communication is taking place." *Id*. "In determining what types of auxiliary aids and services are necessary, a public entity shall give primary consideration to the requests of individuals with disabilities." *Id*. The Rehabilitation Act similarly provides that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794(a). Defendant receives federal financial assistance.

Title II of the ADA authorizes private suits for equitable relief and money damages. 42 U.S.C. § 12133; *see Cohen*, 754 F.3d at 695 (citing *Tennessee v. Lane*, 541 U.S. 509, 517

(2004)). Money damages are also available for violations of the Rehabilitation Act. *E.R.K. ex rel. R.K. v. Hawaii Dep't of Educ.*, 728 F.3d 982, 992 (9th Cir. 2013). To prevail under Title II of the ADA, a plaintiff must show that: (1) he is a qualified individual with a disability;[3] (2) he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) this exclusion, denial, or discrimination was by reason of his disability. *Cohen v. City of Culver City*, 754 F.3d 690, 695 (9th Cir. 2014). The elements under the Rehabilitation Act are essentially identical. *E.R.K. ex rel. R.K. v. Hawaii Dep't of Educ.*, 728 F.3d 982, 992 (9th Cir. 2013).

Recovery of money damages under both statutes requires a showing of intentional discrimination. *Cohen*, 754 F.3d at 695, n 6; *Duvall v. Cty. of Kitsap*, 260 F.3d 1124, 1135 (9th Cir. 2001), *as amended on denial of reh'g* (Oct. 11, 2001). To establish intentional discrimination, the plaintiff may prove that the defendant public entity acted with "deliberate indifference," meaning that (i) it knew that harm to a federally protected right was substantially likely and (ii) failed to act upon that knowledge. *Cohen*, 754 F.3d at 695. The first element is satisfied when the public entity has notice that an accommodation is required. *Lovell v. Chandler*, 303 F.3d 1039, 1056 (9th Cir. 2002) (citing *City of Canton v. Harris*, 489 U.S. 378, 389 (1989)). The second element is satisfied if the entity's failure to act is a result of conduct that is "more than negligent, and involves an element of deliberateness. *Id.* Under the second element, "a public entity does not 'act' by proffering just any accommodation: it must consider

---

[3] Under the ADA, a "qualified individual with a disability" means "an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2).

the particular individual's need when conducting its investigation into what accommodations are reasonable." *Id.* (footnote omitted); *Lovell*, 303 F.3d at 1056.

## DISCUSSION

### A. Plaintiff's Motion to Compel

Updike filed this lawsuit on April 29, 2015. Eleventh months later, on March 31, 2016, the Court granted Updike's motion to extend discovery and other pretrial deadlines. ECF 59. The Court ordered that any discovery motions were due no later than May 28, 2016, discovery shall be completed by June 28, 2016, any motion to certify the class must be filed by August 1, 2016, and dispositive motions were due by October 3, 2013. *Id.* The Court also expressly stated, "Any further requests for extension are disfavored." *Id.*

Updike filed his pending motion to compel on November 4, 2016. ECF 128. The County responds that, among other things, Updike's motion is untimely. ECF 140 at 2. In his motion to compel, Updike seeks an order directing the County to "produce documents identifying all deaf inmates held in [the County's] jail." ECF 128 at 2. Updike argues that "[t]hese documents were requested in Plaintiff's First Request for Production, Request No. 26." *Id.* According to Updike's motion, on September 23, 2015, Plaintiff requested "[a]ll documents sufficient to identify each deaf and hard of hearing inmates incarcerated by the [County jail] within the past five years." ECF 128 at 2 ("Request for Production No. 26"). After the County objected to the request as vague and overly broad, Updike filed a motion to compel on November 20, 2015. ECF 26 (motion to compel production of documents); *see also* ECF 128 at 2-3. The County agreed to provide documents responsive to Updike's request. On November 23, 2015, the Court denied Updike's motion to compel with leave to renew. ECF 31. On December 15, 2015, the County provided booking sheets with the names of eight deaf and hard of hearing inmates, including Updike and two of the other individuals later discussed in Updike's motion for class

certification, Michael Elliott and Frank Mounts. The County also provided discovery relating to two other specific individuals.

After Updike filed the pending motion for class certification, the County informed Updike that the County had identified another deaf inmate and several hard of hearing inmates—"twenty something (inmates) . . . [n]ot a firm number"—and would be providing discovery regarding those inmates "in a few days." ECF 129 ¶ 8. On August 24, 2016, Updike received several thousand pages of discovery from Defendant "concerning thirty additional deaf and hard of hearing inmates." *Id*. at 3, ECF 129 ¶ 10. Those documents concerned 21 male inmates and nine female inmates that the County had not previously identified as deaf. ECF 128 at 3; ECF 129 ¶ 11. Updike's motion to compel also requests sanctions against the County for its failure and refusal to supplement discovery until after the close of discovery and the filing of Plaintiff's motion for class certification. ECF 128 at 6-8.

On the merits, Defendant argues that it has fully complied with Updike's request for production, supplementing its discovery responses on November 30, 2016, approximately 90 days after its earlier supplemental production of records on August 22, 2016. ECF 140 at 4. Defendant also argues that records of at least one inmate that Updike states were not previously included in Defendant's productions actually were included. ECF 140 at 5. Defendant also states that it advised Plaintiff at the time of Defendant's August 22, 2016 production that the timing of the supplemental production resulted from Defendant's review of Plaintiff's class certification motion. Defendant explained that the August 1, 2016 class certification motion itself was the first notice to Defendant that Plaintiff considered Defendant's earlier production to be incomplete. Prompted by that notice, Defendant then renewed its search for records to verify the completeness of its prior production and supplemented the records as required. ECF 140 at 5.

PAGE 10 – OPINION AND ORDER

Plaintiff requested "[a]ll documents sufficient to identify each deaf and hard of hearing inmate" incarcerated by Defendant. Defendant argues that Plaintiff never previously defined "hard of hearing," thus making Plaintiff's request vague and overly-broad. Thus, Defendant argues, Plaintiff's current request seeks to compel discovery that was never clearly requested in the first place. ECF 140 at 5-6. Additionally, Defendant asserts that Plaintiff only requested "documents sufficient to *identify* each" inmate (emphasis added) and disputes that it was ever required by Plaintiff's request to produce new files for repeat inmates whose information from a previous incarceration was already produced. Defendant's arguments are well taken.

Plaintiff's Motion to Compel Production of Documents and for Sanctions (ECF 128) was not timely filed. In addition, Defendant represents that it has fully complied with all pending discovery requests. In reply, Plaintiff states that Defendant provided additional discovery after the motion was filed and this Plaintiff should be awarded his reasonable attorney's fees under Rule 37(a)(5)(A) of the Federal Rules of Civil Procedure. Defendant responds that its late production was substantially justified and that the circumstances make an award of expenses unjust. Defendant's position is well taken. Plaintiff's motion to compel and for sanctions is denied.

## B.  Plaintiff's Second Motion to Supplement the Record

On January 4, 2017, Updike filed his second motion to supplement the record in support of class certification, seeking to add "proof of additional deaf and hard of hearing inmates not disclosed by Defendant until August 24, December 1 and 2, 2016." ECF 142 at 2.[4] Updike also asks the Court to take notice of "the thirty (30) additional deaf and hard of hearing inmates"

---

[4] Updike previously moved to supplement the record in support of his motion for class certification (ECF 126), and the Court granted that motion to supplement. ECF 139.

listed in Plaintiff's first motion to supplement the record and in Plaintiff's most recent motion to compel. *Id*. In the accompanying declaration of counsel, Updike identifies additional individuals about whom the County provided late discovery in December. ECF 143 ¶ 3. Updike adds that he received an additional 5,787 pages of discovery from the County on December 1 and 2, 2016, consisting of the records of forty-three deaf and hard of hearing inmates, most of which had been provided before, but at least the names of ten deaf and hard of hearing inmates were new in these records. *Id*. ¶¶ 9, 10. According to Updike, seven of these additional individuals were described in the County's discovery documents as "deaf," while others were described as "hearing impaired," as having "hearing problems," or as having at least some indication of hearing impairment. The records for eight out of ten of these individuals indicate that they were not provided with an interpreter while in County jail.

In response to Plaintiff's second motion to supplement the record, Defendant states that it conducted an additional search after receiving Plaintiff's class certification motion and produced additional discovery on August 22 and November 30, 2016. ECF 144 at 2. The County adds that seven of the inmates disclosed in its supplemental production of December 1 and 2 were previously unidentified because those inmates had indicated their ability to hear and had not been previously incarcerated at Clackamas County jail. *Id*. The County argues that because most of the inmates in the later production were already known to Plaintiff from the County's earlier production, Plaintiff fails to show good cause why these inmates were not part of Plaintiff's petition for class certification. *Id*. According to the County, one of the inmates has settled his claims with the County, and each of the "new" inmates had previously been identified as hearing impaired or deaf at least in some part of their previously-produced jail records. *See* ECF 144 at 4

(citing Snyder Decl, ECF 143, at paragraphs 10-19). Plaintiff's Second Motion to Supplement

the Record in Support of Motion for Class Certification (ECF 142) is granted.

**C. Plaintiff's Motion for Class Certification**

    **1.   Plaintiff's multiple proposed class definitions**

      Although Updike moves to certify a single class, he offers at least two and possibly as

many as three different definitions of the proposed class. First, in Plaintiff's "Motion for Class

Certification," Updike moves to certify the following class:

> all *deaf or hard of hearing inmates* who formerly were or currently
> are incarcerated in the Clackamas County Jail, or who will become
> incarcerated in said jail in the future.

ECF 99 at 2 (emphasis added). Second, early in "Plaintiff's Memorandum in Support of Motion

for Class Certification," Updike provides a materially different class definition. Here, Updike

states that he seeks to have certified and represent a class defined as:

> (i) all current and future *deaf or hard of hearing* individuals
> incarcerated by Clackamas, and (ii) *who require accommodations*,
> including interpreters or other auxiliary aids or services, *to
> communicate effectively and/or to access programs or services
> available to individuals incarcerated by Clackamas* during the
> Class Period.

ECF 99 at 10-11 (internal pages 1-2) (emphasis added).[5]

      Third, Updike states later in his memorandum that he seeks "to certify a class of all *deaf*

*inmates* that have been incarcerated in the class period." ECF 99 at 33 (internal page 24)

(emphasis added) (excluding hard of hearing inmates). This third proposed definition is most

---

[5] At oral argument, Plaintiff at first stated that the second condition of the proposed class definition, which follows "(ii)," added nothing of substance to the first condition, which follows "(i)." Toward the end of the oral argument, however, after Plaintiff discussed the difference between persons who are deaf and persons who are only hard of hearing, Plaintiff argued that the second condition did further restrict the proposed class definition and was not fully co-extensive with the first condition.

similar to the one alleged in Updike's Amended Class Action Complaint, which defines the proposed class as: "All persons in the state of Oregon who are or have been deaf and incarcerated by Defendant[] during the Class Period." ECF 5 at ¶ 85(a) (again, excluding hard of hearing inmates). Updike defines the "Class Period" as "April 29, 2013 to the present."[6]

As more fully discussed below, the difference between Updike's first proposed class definition (which the Court refers to as Plaintiff's "broad" definition) and Updike's second proposed class definitions (which the Court refers to as Plaintiff's "narrow" definition) is significant. The first definition (the broad definition) proposed by Updike may satisfy the requirement of numerosity that is demanded by Rule 23(a), but it will be unable to satisfy the requirements of typicality under Rule 23(a) or the requirement of predominance under Rule 23(b)(3). The second definition (the narrow definition) proposed by Updike may satisfy the requirements of typicality and predominance, but the evidence is lacking that it satisfies the requirement of numerosity under Rule 23(a).

## 2. Plaintiff's inability to seek relief on behalf of future inmates

In both Updike's first class definition and his second, Updike proposes to include in his certified class all deaf or hard of hearing people "who will become incarcerated" (or "future deaf or hard of hearing individuals incarcerated") at the Clackamas County Jail. Future class members necessarily may seek only injunctive relief; they cannot recover money damages for "past injuries" that, by definition, have not yet occurred. The Court, however, has already dismissed Plaintiff's claims for injunctive relief for lack of standing. *See Updike*, 2015 WL 7722410, at *10

---

[6] The Class Period begins on April 29, 2013 because the Court previously has ruled that Plaintiff's claims based on conduct occurring before April 29, 2013 are time-barred. *Updike*, 2015 WL 7722410, at *6, 10 (ECF 32).

(ECF 32). The Court has also already denied Plaintiff's motions to amend and for reconsideration on this point. ECF 54; ECF 94. By seeking to certify a class that includes "future inmates" seeking only injunctive relief, Plaintiff repeats arguments that already have been rejected.[7]

Because Updike lacks standing to seek injunctive relief, Updike's proposed class definitions that include "future" inmates are defective. Nevertheless, the Court has the discretion to consider a modified class definition that omits all references to "future" inmates (or persons "who will become incarcerated") at the Clackamas County jail. *See* Wright & Miller, 7A Fed. Prac. & Proc. Civ. § 1759 (3d ed.) ("[I]f plaintiff's definition of the  class is found to be unacceptable, the court may construe the complaint or redefine the class to bring it within the scope of Rule 23[.]") The Court will exercise this discretion.

### 3. Numerosity

As modified, the Court first considers Plaintiff's proposed broad class, defined as "all deaf or hard of hearing inmates who formerly were or currently are incarcerated in the Clackamas County Jail anytime during the period of April 29, 2013 to the present." The Court next considers Plaintiff's proposed narrow class, defined as "(i) all current [or former] deaf or hard of hearing individuals incarcerated by Clackamas (ii) who require [or required] accommodations, including interpreters or other auxiliary aids or services, to communicate

---

[7] To the extent that this aspect of Plaintiff's motion for class certification may be construed as a second motion for reconsideration of the Court's earlier ruling, the Court denies this "motion" for the same reasons that it denied Plaintiff's earlier motions to amend and for reconsideration. *See* ECF 54; ECF 94; s*ee also Cachil Dehe Band of Wintun Indians of Colusa Indian Cty. v. California*, 649 F. Supp. 2d 1063, 1069 (E.D. Cal. 2009) ("In the absence of new evidence or a change in the law, a party may not use a motion for reconsideration to raise arguments or present new evidence for the first time when it could reasonably have been raised earlier in the litigation." (*citing Carroll v. Nakatani*, 342 F.3d 934, 945 (9th Cir. 2003))).

effectively and/or to access programs or services available to individuals incarcerated by Clackamas (iii) anytime during the period of April 29, 2013 to the present."

Rule 23(a)(1) requires Plaintiffs to demonstrate that the proposed class "is so numerous that joinder of all members is impracticable." Rule 23(a)(1) provides no bright-line test or minimum number of class members necessary to meet the numerosity requirement; instead, the court must evaluate the specific facts of each case. *Gen. Tel. Co. of the Nw., Inc. v. EEOC*, 446 U.S. 318, 330 (1980). In general, classes of 15 members or fewer are too small, and classes of 16 to 39 members may or may not be sufficiently numerous, depending on the facts of the specific case. *See id.*; *see also* Moore's Federal Practice § 23-05 (2d ed. 1987). In the District of Oregon, there is a "rough rule of thumb" that 40 class members is sufficient to meet the numerosity requirement. *Giles v. St. Charles Health Sys., Inc.*, 294 F.R.D. 585, 590 (D. Or. 2013); *see also Wilcox Dev. Co. v. First Interstate Bank of Or., N.A.*, 97 F.R.D. 440, 443 (D. Or. 1983) (same); 1 McLaughlin on Class Actions § 4:5 (11th ed.) ("The rule of thumb adopted by most courts is that proposed classes in excess of 40 generally satisfy the numerosity requirement.").

Plaintiff's proposed broad class consists of "all deaf or hard of hearing inmates who formerly were or currently are incarcerated in the Clackamas County jail" between April 29, 2013 and the present. Plaintiff relies on the Clackamas County Sheriff's Office website, which states that "[a]pproximately 16,000 offenders are booked into and processed at the Clackamas County Jail annually." ECF 99 at 33 (citing www.clackamas.us/sheriff/jailfacts.html). Plaintiff also cites a 2003 academic journal article and a 2008 U.S. Department of Justice report. These sources indicate that 5.7% and 9%, respectively, of all state inmates are deaf or hard of hearing. ECF 99 at 34 (citing Krinert, Jessie L., et al., *Inmates with Physical Disabilities: Establishing a Knowledge Base*, 1 SW. J. of Crim. Just. 16 (2003) and Maruschak, Laura M., *Medical Problems*

PAGE 16 – OPINION AND ORDER

*of Prisoners*, U.S. Department of Justice, Office of Justice Programs, Bureau of Justice Statistics (rev. 2008)). Even under the lower estimate provided in the Krinert article, Plaintiff's data show that approximately 900 deaf or hard of hearing individuals are incarcerated at the Clackamas County jail annually.

Several courts have concluded that similar types of statistical data are sufficient to establish numerosity. *See, e.g., Williams v. Conway*, 312 F.R.D. 248, 251 (N.D.N.Y. 2016) (numerosity established where plaintiff's estimate of the number of deaf or hard of hearing individuals imprisoned by the county was based on the sheriff's annual report of the number of individuals imprisoned in the county, cross-referenced against a 2002 Bureau of Justice report estimating the percentage of hearing impaired jail inmates); *see also Padron v. Feaver*, 180 F.R.D. 448, 453 (S.D. Fla. 1998) (numerosity of class of Florida residents who were denied social security benefits established by cross-reference of national estimate of number of persons denied benefits against number of social security applicants located in Florida); *Lewis v. Gross*, 663 F. Supp. 1164, 1169 (E.D.N.Y. 1986) (estimate of size of putative class of New York aliens denied Medicaid on the basis of their alien status was based on percentage of New York residents receiving Medicaid multiplied by the total number of aliens in New York).

Defendant responds that Plaintiff cannot establish numerosity without "admissible" evidence of the number of class members. ECF 115 at 15-16. Evidence need not be admissible at trial, however, in order to be considered for purposes of a class certification inquiry. *In re Rand Corp.*, No. 02–8007, 2002 WL 1461810, at *1 (D.C.Cir. July 8, 2002) ("[T]he propriety of a district court's refusal to scrutinize for admissibility and probative value evidence proffered to demonstrate that the requirements of Federal Rule of Civil Procedure 23(a) are satisfied is well-settled.") (*citing Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177–78, 94 S.Ct. 2140, 40

L.Ed.2d 732 (1974) (a Rule 23 determination is "of necessity . . . not accompanied by the traditional rules and procedures applicable to civil trials))."

For the same reason, the Court rejects Defendant's additional argument that the studies to which Plaintiff cites are hearsay that cannot be considered unless authenticated or offered by an expert. Defendant also argues that Plaintiff misrepresents the literature upon which Plaintiff's estimate relies. Specifically, Defendant argues that: (i) Plaintiff inaccurately dates the U.S. Department of Justice report to 2008, even though it is a 2004 publication; (ii) the report states that the rate of hearing impairment among state prisoners was seven percent, not nine percent as Plaintiff claims; and (iii) the report's estimate is not of the number of state inmates with "hearing disabilities," as Plaintiff claims, but rather of the number of inmates with a hearing "impairment." ECF 115 at 18. The Court concludes that, even if true, those distinctions are insufficient to undermine Plaintiff's estimate to a meaningful degree. A reasonable, good faith estimate is all that is required. *See Peralez*; *L.H. v. Schwarzenegger*, No. Civ. S-06-2042 LKK/GGH; *Cortigiano v. Oceanview Manor Home for Adults*, 227 F.R.D. 194, 204 (E.D.N.Y. 2005).

Thus, Plaintiff's proposed broad class is sufficiently numerous to satisfy Rule 23(a)(1). As discussed below, however, Plaintiff's broad class definition raises problems of typicality and predominance. Before turning to those issues, however, the Court addresses whether Plaintiff's narrow class definition satisfies the requirement of numerosity. It does not.

To reiterate, Plaintiff's proposed narrow class definition consists of "(i) all current deaf or hard of hearing individuals incarcerated by Clackamas, and (ii) who require accommodations, including interpreters or other auxiliary aids or services, to communicate effectively and/or to access programs or services available to individuals incarcerated by Clackamas during the Class

Period." Defendant has provided Plaintiff with discovery relating to more than 40 deaf or hard of hearing inmates at the County jail in the class period.

In support of his motion for class certification, Updike provides evidence specifically relating to four of those individuals—Updike, Abraham, Elliot, and Mounts. Plaintiff presents evidence that each of these four individuals required but did not receive appropriate auxiliary aids while incarcerated at the Clackamas County jail. Plaintiff, however, does not present evidence that any other putative class members *required but did not receive* appropriate auxiliary aids while incarcerated by Defendant.

After the close of discovery and the filing of Plaintiff's class certification motion, Defendant provided Plaintiff with discovery indicating that approximately 40 additional deaf or hard of hearing were incarcerated at the Clackamas County jail during the class period. Even with the inclusion of these additional class members, however, there are only approximately 40 individuals *in total*. Although Plaintiff alleges that all of these individuals are hearing impaired to some extent and did not receive an ASL interpreter while incarcerated, Plaintiff has not alleged, let alone presented any evidence, that *each* of these 40 individuals *actually required* any auxiliary aid or other accommodation while incarcerated, including but not limited to an ASL interpreter. Without such evidence, which is required by Defendant's own proposed narrow class definition, the Court cannot find any more than a handful of people who needed accommodation that was not provided. Thus, Plaintiff's narrow class definition, consisting of less than a handful of people, fails to meet the numerosity requirement. Because this is a threshold requirement for class certification, the Court declines to consider the other requirements of class certification as applied to Plaintiff's proposed narrow class definition.

PAGE 19 – OPINION AND ORDER

### 4. Commonality, typicality, and predominance

Rule 23(a)(2) states that class certification is appropriate only when the case presents "questions of law or fact common to the class." In order to satisfy the commonality requirement, Plaintiffs must show that the class members suffered the "same injury"—that their claims depend upon a "common contention." *Wal-Mart*, 131 S. Ct. at 2551 (quotation marks omitted). "To assess whether the putative class members share a common question, … we must identify the elements of the class members' case-in-chief." *Stockwell v. City and County of San Francisco*, 749 F.3d 1107, 1114 (9th Cir. 2014); *see also Parsons v. Ryan ("Parsons II")*, 754 F.3d 647 (9th Cir. 2014) (citing *Amgen, Inc., v. Connecticut Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1194-95 ("[I]n all class actions, commonality cannot be determined without a precise understanding of the nature of the underlying claims."). "That common contention, moreover, must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* "What matters to class certification ... is not the raising of common questions—even in droves—but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *Id.* Put another way, a class lacks the necessary cohesion if a single answer will not "resolve an issue that is central to the validity of each one" of the class members' claims. *Id.* at 2551; *Parsons v. Ryan ("Parsons III")*, 784 F.3d 571, 575 (9th Cir. 2015). But class members need not have every issue in common: Commonality requires only "a single significant question of law or fact" in common. *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 589 (9th Cir. 2012); *see also Wal-Mart*, 131 S. Ct. at 2556.

In order to meet the typicality requirement, Plaintiffs must show that the named parties' claims are typical of the claims of the class. Fed. R. Civ. P. 23(a)(3). A representative's claims are "typical" if they are "reasonably co-extensive with those of absent class members; they need

not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).

"The purpose of the typicality requirement is to assure that the interest of the named

representative aligns with the interests of the class." *Hanon v. Dataproducts Corp.*, 976 F.2d

497, 508 (9th Cir. 1992). In order to determine whether claims and defenses are typical, courts

look to "whether other members have the same or similar injury, whether the action is based on

conduct which is not unique to the named plaintiffs, and whether other class members have been

injured by the same course of conduct." *Id.* (quotation marks omitted); *see also Wolin v. Jaguar

Land Rover N. Am.*, LLC, 617 F.3d 1168, 1175 (9th Cir. 2010). As the Supreme Court

recognized in *Wal–Mart*, the requirements of commonality and typicality contained in Rule 23(a)

occasionally merge: "Both serve as guideposts for determining whether under the particular

circumstances maintenance of a class action is economical and whether the named plaintiff's

claim and the class claims are so interrelated that the interests of the class members will be fairly

and adequately protected in their absence." *Parsons v. Ryan*, 754 F.3d 647, 685 (9th Cir. 2014)

(*Parsons II*) (quoting *Wal-Mart*, 131 S.Ct. at 2551 n.5).

The Ninth Circuit revisited the post-*Wal-Mart* landscape in the context of class action

prison litigation in *Parsons II*, 754 F.3d at 662 (upholding district court's class certification

order; *see Parsons v. Ryan ("Parsons I"*), 289 F.R.D. 513, 516 (D. Ariz. 2013). The plaintiffs in

*Parsons* were thirteen inmates in the custody of the Arizona Department of Corrections ("ADC")

claiming that ADC's policies and practices governing medical, dental, and mental health care

expose all inmates "to a substantial risk of serious harm" in violation of the Eighth Amendment

of the federal Constitution. *Parsons II*, 754 F.3d at 662-63. The plaintiffs sought declaratory and

injunctive relief to eliminate identified systemic deficiencies in ADC's statewide health care

system. *Id*. at 663.

In what the Ninth Circuit called "a careful, thorough, and rigorous opinion," the district court certified a class consisting of "[a]ll prisoners who are now, or will in the future be, subjected to the medical, mental health, and dental care policies and practices of the ADC." *Parsons I*, 289 F.R.D. at 515.[8] The district court concluded that a "question common to all members of the Class . . . is whether Defendants' practices are deliberately indifferent to inmates' health and safety in violation of the Eighth Amendment and subjection to unconstitutional conditions of confinement in isolation units." The court identified ten specific ADC health care practices that allegedly expose all members of the certified class to a substantial risk of harm to which the defendants are deliberately indifferent. *Id*. at 673. Those statewide practices, the district court concluded, created the commonality required for the plaintiffs to proceed by class form. *Id.* The district court emphasized that "the problems identified in the provision of health care are not merely isolated instances but, rather, examples of systemic deficiencies that expose all inmates to a substantial risk of serious harm." *Parsons I*, 289 F.R.D. at 521.

The Ninth Circuit concluded that the district court had not abused its discretion in certifying the proposed class. The appellate court agreed that the allegedly deficient statewide "policies and practices are the 'glue' that holds together the putative class and the putative subclass; either each of the policies and practices is unlawful as to every inmate or it is not." *Id*. at 678. The circuit court rejected the defendants' description of the plaintiffs' claims as "little more than an aggregation of many claims of individual mistreatment," concluding that such a description rests on a misunderstanding of the plaintiffs' allegations. *Id*. at 676. The court

---

[8] The district court also certified a subclass of individuals alleging violations stemming from the conditions of isolation units. The existence of this subclass and the court's subclass analysis are not relevant to analysis of Plaintiff's motion for class certification.

explained, "[t]he [c]omplaint does not allege that the care provided on any particular occasion to any particular inmate (or group of inmates) was insufficient, but rather that ADC policies and practices of statewide and systemic application expose all inmates in ADC to a substantial risk of harm." *Id*. The court reasoned that all class members must ask a question about their individual claim(s) that can be resolved with one answer, namely, whether the ADC policies and practices to which they are all subjected by ADC exposes them to a substantial risk of harm. *Id*. at 678. "What all members of the putative class and subclass have in common is their alleged exposure, as a result of specified statewide ADC policies and practices that govern the overall conditions of health care services and confinement, to a substantial risk of serious future harm to which the defendants are allegedly deliberately indifferent." *Id*.

In *Parsons II*, the Ninth Circuit distinguished the claims asserted in that case from those asserted in *Wal-Mart*, stating that, unlike *Wal-Mart*, *Parsons* "looks to whether current conditions in ADC facilities create a risk of future harm, not to the varied reasons for millions of decisions made in the past." *Parsons II*, 754 F.3d at 681. The court also distinguished *Wal-Mart* on the bases that uniform statewide practices created and overseen by two individuals charged with ultimate responsibility for the health care and other conditions of confinement in all ADC facilities, not a grant of discretion to thousands of mangers. The Ninth Circuit also distinguished the claims asserted in *Parsons* on the grounds that the class involved a relatively much smaller and more geographically concentrated number of class members—33,000 in custody of a single state agency versus millions of employees scattered throughout the U.S.—and that the analysis turned on whether current conditions in ADC facilities create a risk of future harm, not the varied reasons for millions of decisions made in the past.

Plaintiff argues that *Parsons II* supports class certification here. Plaintiff argues that commonality is established because he challenges system-wide practices and policies that affect all putative class members. ECF 99 at 36. Plaintiff characterizes his claim as an attack against Defendant's "system-wide policies and the fact that Clackamas does not provide appropriate accommodations required" by law. ECF 118 at 23. Plaintiff also characterizes his action as a challenge to "a common practice or policy regarding [Defendant's] failure to access the needs of deaf and hard of hearing inmates resulting in a systemic denial of the assistance they need to communicate effectively and participate in its programs and services," in violation of the ADA and Rehabilitation Act. ECF 118 at 24. According to Plaintiff, the common answer to this question will determine class members' "entitlement to more robust procedural protections." ECF 118 at 24. Plaintiff argues that under such circumstances, individual factual differences among the individual class members will not preclude a finding of commonality. ECF 99 at 37.

Defendant responds that, without the availability of classwide *injunctive* relief, Plaintiff's and the putative class members' claims are too highly particularized to justify certification of a class seeking money damages. ECF 115 at 22-23. Among other things, Defendant argues that whether each class member was "a qualified individual with a disability," whether each class member suffered actual injury, and whether that injury was the result of Defendant's deliberate indifference are all individualized inquiries that render class certification inappropriate here. *Id.* at 23-24.

Defendant has the better argument. Although Plaintiff tries to analogize the circumstances of the instant dispute to those in *Parsons*, there is a key distinction between this case and *Parson* that is fatal to Plaintiff's argument. As explained above, Plaintiff is precluded from seeking injunctive relief of the type sought in *Parsons*. The unitary nature of both the harm

suffered by the class members and the injunctive remedy sought in *Parsons* was central to the Ninth Circuit's ruling in that case.

As the circuit court explained in a particularly apt passage:

> The defendants' insistence that commonality is defeated by individual variations in preexisting conditions, demand for medical care, and response to treatment is incorrect. Even if some inmates are exposed to a greater or idiosyncratic risk of harm by the policy and practice of not hiring enough staff to provide adequate medical care to all inmates, *that single policy and practice allegedly exposes every single inmate to a serious risk of the same basic kind of harm.* Thus, while *Wal–Mart* instructs that "[d]issimilarities within the proposed class ... have the potential to impede the generation of common answers," 131 S.Ct. at 2551, the acknowledged dissimilarities here between members of the proposed class do not in any way bear on or disrupt what they allegedly have in common, and it is that common exposure to ADC policies that constitutes the core factual predicate of their shared legal claim. In other words, ADC staffing policies for all of its facilities are either constitutional or unconstitutional as to all inmates—that legal contention can be answered in one stroke

*Parsons II*, 754 F.3d at 680; *see id.* at 689, n.23 ("Contrary to the defendants' assertion that each inmate's alleged injury is amenable only to individualized remedy, every inmate in the proposed class is allegedly suffering from the same (or at least similar) injury and that injury can be alleviated for every class member by uniform changes in statewide ADC policy and practice.").

By contrast, injunctive relief is unavailable here. Thus, Plaintiff fails to show typicality and predominance (as possibly commonality as well). Without the ability to seek classwide *injunctive* relief, each putative class member will be required to litigate the individualized nature of his or her alleged degree of hearing impairment and precisely what aid or assistance that inmate reasonably needed but was denied by Defendant, as well as whether Defendant acted with deliberate indifference toward each individual putative class member. There is no other way to determine whether a class member has suffered injury by Defendant or compensable damage. For all of these reasons, certification of a class in this case is inappropriate.

**CONCLUSION**

Plaintiff's Motion to Compel Production of Documents and for Sanctions (ECF 128) is

DENIED. Plaintiff's Second Motion to Supplement the Record (ECF 142) is GRANTED.

Plaintiff's Motion for Class Certification (ECF 99) is DENIED.

**IT IS SO ORDERED**.

DATED this 13th day of February, 2017.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge